CAREY ELECTRIC CONTRACTING, INC., *et al.*, Plaintiffs-Appellants, *v.* THE FIRST NATIONAL BANK OF ELGIN, Defendant-Appellee.

Second District   No. 78-392

Opinion filed July 18, 1979.

Birch E. Morgan and Joseph W. Phebus, both of Phillips, Phebus, Tummelson and Bryan, of Urbana, for appellants.

Leo M. Flanagan, Jr., of Brittain, Ketcham, Strass, Terlizzi and Flanagan, of Elgin, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

On April 12, 1976, plaintiffs Carey Electric Contracting, Inc. (Carey), Piping Systems, Inc. (Piping), C & K Precision Concrete Co. (C & K) and Hastings Pavement Co., Inc. (Hastings) filed a 12-count suit against the First National Bank of Elgin (the Bank), asking that they be declared the beneficial owners of certain funds held by the Bank. On June 21, 1978, after viewing written exhibits and hearing oral testimony, the trial court issued a decree finding in favor of the Bank on all 12 counts. All four plaintiffs have appealed.

This dispute arises over a check for approximately $62,000 deposited in the Bank by Benchmark, Inc. (Benchmark), in November 1975, which the Bank set off against monies owed it by Benchmark. Plaintiffs claim that the Bank had no right to set off those funds and that the Bank should be declared to be a constructive trustee of the funds for the benefit of plaintiffs.

In July 1975 the City of Elgin entered into a contract with Benchmark, a general contractor, for a public works project. According to this contract Benchmark was to be paid in five separate installments. To receive payments it had to submit waivers executed by its subcontractors waiving mechanics' liens on work done pursuant to the requested payment. As Benchmark was not paid by the city until 30-45 days after payment was requested, it borrowed money from the Bank to cover expenses in the interim and assigned a security interest in the city's payment to the Bank. The contract with the city contained a provision that Benchmark could not assign the right to payment without written consent of the city; the city's checks, however, were made payable to

both Benchmark and the Bank. Three of the plaintiffs, Carey, Piping and C & K, were subcontractors working on the project in question. The fourth plaintiff, Hastings, became the co-principal on Benchmark's contract bond pursuant to a bonding agreement, for which Hastings was to receive a fee of $57,500.

When the fifth payment from the city to Benchmark became due the subcontractors had still not been paid for work done pursuant to the fourth payment. On November 5, 1975, Benchmark delivered a check for $4500 to Carey and one for $11,520 to C & K. At that time William A. Miller, the president of Benchmark, requested that both subcontractors not deposit the checks until November 11. Both Carey and C & K agreed to this delay and executed lien waivers on the same date, their representatives testifying that they had done so on the assumption that Benchmark's checks would be good on November 11. The representative of C & K testified that a request to hold the check for a few days was not infrequently made in the contracting business, but that if he had known that Benchmark would not have had sufficient funds to cover the check on November 11 he would not have executed the lien waiver. The third subcontractor, Piping, as was its ordinary practice, sent executed lien waivers to Benchmark for both payment request #4 and payment request #5, along with its invoice, without receiving any specific request to do so. A representative from Piping testified that it gave the lien waivers to Benchmark in reliance on Benchmark's integrity to pay the money covered by the waivers.

The city delivered to Benchmark a check for $62,458.19, dated November 10, 1975, and made out to Benchmark and the Bank. On November 11 Carey and C & K deposited the checks from Benchmark in their respective accounts at other banks. The checks arrived at the defendant Bank on November 13 and were automatically marked paid. Subsequently, the Bank realized that there were not sufficient funds to cover these checks, marked them accordingly on November 14, and returned them to plaintiffs' banks.

On November 14, 1976, Miller, the president of Benchmark, gave the $62,000 check to a Bank officer and told him "I had to have money from that check to pay subs and the payroll on the Fountain Square job." The Bank officer made no commitment to allow the money to be used for that purpose and, in fact, later used the entire proceeds of the check as set-offs against loans Benchmark had with the Bank. It is not clear whether the loans the check was applied against had matured at that time, nor is it clear whether the checks to the subcontractors were returned before or after Miller's conversation with the Bank officer.

Benchmark was unable to finish the project and subsequently became bankrupt.

Hastings' claim is not based on work done as a subcontractor but on its relations as a co-principal to Benchmark on the bonding agreement. A representative of Hastings testified that its agreeing to become a co-principal had been necessary for Benchmark to obtain the contract and that it had relied on Benchmark to fulfill its obligations. Hastings was never paid the $57,500 due under the bonding agreement. In addition, upon Benchmark's default, Hastings was forced to pay more than $300,000 in unpaid wages and debts connected with the project.

Prior to trial the parties entered into a stipulation, incorporated in a pretrial order, that damages for Carey were $7,865.09, for Piping $18,795, and for C & K $24,670. As to Hastings, it was merely stipulated that $57,500 was owed on the bonding agreement. There was no stipulation as to any additional damages.

In order to prevail, plaintiffs herein must prove two things. First, that Benchmark held the $62,000 check as a constructive trustee for their benefit and, second, that the Bank's possession of the check is subject to those rights under the constructive trust.

Plaintiffs offer three potential grounds for the existence of a constructive trust with Benchmark as trustee: (1) fraud, (2) misrepresentation, and (3) the existence of a confidential relationship. Plaintiffs' first argument is that a constructive trust should be found to exist because of Benchmark's allegedly fraudulent behavior in at least impliedly promising that it would meet its future contract obligations when, in fact, it could not. In this context plaintiffs argue strongly that the president of Benchmark should have known that there was a good chance of the Bank's applying the $62,000 check to loans when he gave checks to Carey and C & K on November 5. Defendant Bank contends that plaintiffs have waived this issue by not raising it in the trial court but, in fact, it is not clear whether plaintiffs did raise this issue there. Fraud was not specifically referred to in the pleadings but was discussed in detail in one of plaintiff's trial briefs. As we are convinced that there was not fraud sufficient to establish a constructive trust in this case, we can discuss the merits of the question without reaching a decision on whether it was raised at trial.

■■ In its general sense, fraud means anything calculated to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence resulting in damage to another. There is no general rule for determining what facts will constitute fraud. Rather, its existence depends upon the particular facts of each case. It is well settled, however, that fraud is never presumed. (*Majewski v. Gallina* (1959), 17 Ill. 2d 92, 160 N.E.2d 783.) Fraud may be the basis for a constructive trust (see, *e.g., Brennan v. Persselli* (1933), 353 Ill. 630, 187 N.E. 820), but Benchmark's actions in the instant case do not meet

traditional requirements of fraud. As the court noted in *Wright v. Peabody Coal Co.* (1937), 290 Ill. App. 110, 116, 8 N.E.2d 68, 70:

> " * * * in order to constitute fraud in law, a representation must be an affirmance of fact and not a mere promise or expression of opinion or intention. [Citations.] A false representation within the meaning of the law in order to constitute a cause of action must be a representation as to an existing or past fact and not a mere promise to do some act in the future. A failure to comply with a future promise does not constitute fraud."

The allegedly fraudulent conduct cited by plaintiffs does not concern a past or present event but only goes to promises to perform in the future. Thus, the instant case does not fall within the traditional framework of fraud.

■■ Our courts have, however, long recognized an exception to the rule expressed above. When a party makes a false promise as to future conduct which is part of a scheme to defraud, that promise will be treated as fraudulent and actions performed by the innocent party in reliance upon it will be set aside. (See, *e.g.*, *Sullivan v. Sullivan* (1967), 79 Ill. App. 2d 194, 223 N.E.2d 461.) In the instant case, however, there was no intentional scheme to defraud. Benchmark deposited money and requested that the Bank allow it to be used to pay the subcontractors. There is no evidence whatsoever that Benchmark, at the time it promised payment, intended to defraud the subcontractors or Hastings. Indeed, it was clearly in Benchmark's interest to have these payments made. Thus, Benchmark's promises that future payment would be made did not constitute fraud, and a constructive trust cannot be raised on that basis.

■■ Plaintiffs' second contention is that Benchmark was guilty of negligent misrepresentation and that such conduct should be an alternative basis for raising a constructive trust in Illinois. Defendant's initial response, as with the fraud issue, is that plaintiffs have waived this point by not raising it at trial. In this instance defendant is correct. Negligent misrepresentation was not suggested as a potential basis for a constructive trust until the case was before us on appeal. It is well settled that a party may not try a case upon one theory and then present to the court on appeal, for the first time, another and different theory. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.) Thus, we cannot consider the question of whether negligent misrepresentation could be a basis for constructive trust in the case at bar.

Plaintiffs' final contention is that a constructive trust should be raised because of the allegedly confidential relationship between Benchmark and the plaintiffs herein. A confidential or fiduciary relationship involves confidence and trust on one side and dominance and influence on the other. (*Dyblie v. Dyblie* (1945), 389 Ill. 326, 59 N.E.2d 657.) Such a

relationship exists as a matter of law between attorney and client, guardian and ward, and principal and agent, and may exist in other cases where one party is heavily dependent upon the advice of another. The existence of such a fiduciary relationship must be shown by proof so clear and convincing, so strong, unequivocal and unmistaken that it leads to only one conclusion. *In re Estate of Nelson* (1971), 132 Ill. App. 2d 544, 270 N.E.2d 65.

■■■ Plaintiffs allege they trusted Benchmark and that that trust, plus the dominant position Benchmark occupied in their business relationships because it was the general contractor, operated to create a confidential relationship. We cannot agree. The parties herein were all businesses, theoretically operating at arm's length, and their relationship was governed according to contracts made between them. Normal trust between friends or businesses, plus a slightly dominant business position, do not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship. A confidential relationship only goes to a situation where one party, because of some close relationship, relies very heavily on the judgment of another. We do not say that businesses linked by contract can never be found to be parties in a confidential relationship, but mere allegations that one businessman simply trusted another to fulfill his contractual obligations is certainly not enough. If we were to hold otherwise, most contracting parties might well be found to be in this type of confidential relationship. As no confidential relationship existed between plaintiffs and defendant, we cannot create a constructive trust on that basis.

Because we have concluded that Benchmark did not hold the $62,000 check as constructive trustee for the benefit of plaintiffs, it is not necessary for us to determine whether the Bank's interest would be subject to such a trust, and we will not do so.

For the foregoing reasons, the decree of the trial court finding in favor of the Bank is affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.