**REFCO, INC., Plaintiff,**

v.

**TROIKA INVESTMENT LIMITED, Defendant.**

No. 87 C 9272.

United States District Court, N.D. Illinois, E.D.

Dec. 20, 1988.

Susan R. Lichtenstein, Mark E. Gralen, Sally A. Husak, Schiff Hardin & Waite, Chicago, Ill., for plaintiff.

Robert L. Byman, Richard J. Gray, Steven N. Berk, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Refco, Inc. ("Refco") initially sued Troika Investment Limited ("Troika"), alleging fraudulent misrepresentation and a claim for payment of a large debit balance in Troika's commodities futures trading account with Refco. Troika answered the Complaint (in part by asserting affirmative defenses) and also alleged in an eight-count Amended Counterclaim (the "Counterclaim"):

1. federal statutory violations by Refco involving Commodity Exchange Act §§ 4b and 4d, 7 U.S.C. §§ 6b and 6d (Counts 1, 2 and 7 [1]);

2. state statutory and common law violations by Refco [2] involving

    (a) breach of contract (Counts 3 and 4);

    (b) breach of fiduciary duty (Count 5);

    (c) common law fraud (Count 6); and

    (d) the Illinois Consumer Fraud Act (the "Illinois Act"), Ill.Rev.Stat. ch. 121-½, ¶¶ 261–272 (Count 8).

Refco now moves to dismiss Counts 5 through 8 of the Counterclaim under Fed. R.Civ.P. ("Rules") 12(b)(6) and 9(b). For the reasons stated in this memorandum opinion and order, Refco's motion is granted.

### Facts [3]

This case arises out of transactions occurring on or shortly before "Black Monday," October 19, 1987.[4] Refco is the world's largest commodities brokerage firm (¶ 49). Troika opened a commodity trading account with Refco in 1981 and began trading in early 1983—primarily in gold futures contracts and less frequently in Chicago Mercantile Exchange futures contracts in Standard & Poor's 500 Stock Price Index ("S & P Contracts").

Beginning at 12:08 p.m. October 16 Refco began to receive a number of telex orders from Troika to buy S & P Contracts.[5] By the end of that day Troika's account at Refco contained 265 "open long positions" in S & P Contracts.

Nothing happened between the close of trading on Friday October 16 and the market opening on Monday, October 19 (¶ 14). But at 9:54 a.m. October 19 Refco telexed Troika demanding a $6.5 million margin payment and stating that account liquidation would ensue if that demand were not met within a half hour. Troika's representative Tony Wong ("Wong") promptly responded with a telexed assurance of payment. Refco therefore did not liquidate Troika's account, which then accumulated another $3 million deficit by the end of that day. After the close of trading Refco demanded a $13 million margin payment. On October 20 and 21 Refco liquidated Troika's entire account, leaving a debit balance of some $7.2 million.

Among the Chicago Mercantile Exchange ("CME") rules is one requiring investors to keep margin deposits on account for each S & P Contract. On October 16 that per-contract amount was $5,000 (¶ 11), but CME's Board of Governors voted that day to raise it to $7,500 effective October 19. Even on the $5,000 basis, Troika would have been required to have at least $1,325,000 on de-

---

1. Although the Counterclaim designates the several counts by Roman numerals, this opinion will use the less cumbersome Arabic numerals.

2. Both components of Refco's citizenship under 28 U.S.C. § 1332(c) (all further citations to Title 28 provisions will simply take the form "Section —") classify it as an Illinois citizen, while Troika's status as a Hong Kong corporation makes it a "citizen or subject of a foreign state" under Section 1332(a)(2). That confers federal diversity jurisdiction on all counts, in addition to this Court's Section 1331 federal question jurisdiction over Counts 1, 2 and 7.

3. As always on a motion to dismiss, all well-pleaded allegations of the Counterclaim are taken as true, with all reasonable factual inferences drawn in counterclaimant's favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987)). Counterclaim paragraphs will be labelled simply "¶ —."

4. All dates without year designations refer to 1987 events. All times refer to Central Daylight Time.

5. Troika disputes the validity of several of those orders (see ¶¶ 7–9). However, that is not at all relevant to the current motion.

posit to cover the margin on the October 16 orders. In fact it had only $208,000.

Both the transactions that established the 265 long S & P Contract positions and the October 19 assurance of payment were initiated by Wong. Troika alleges Wong had no actual or apparent authority to do any of those things. Troika also says Refco should have known Wong lacked such authority.

### Fiduciary Duty

■ Troika claims Refco breached a fiduciary duty to Troika when Refco (T.Mem. 5–6 [6])

    1. failed to inquire as to the authority for Troika's orders sent by Wong; and

    2. failed to notify Troika of the latter's margin requirements.

On this motion Refco does not dispute those "failures"—it contends only that it did not owe Troika a duty to make such inquiry or notification.

■ Troika's account with Refco was "non-discretionary": Troika as customer and not Refco as broker made all the trading decisions (R.Mem. 3; T.Mem. 2). In general, only a broker operating a discretionary account is viewed as a fiduciary (*CFTC v. Heritage Capital Advisory Services, Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987)).

Because Illinois law provides the rules of decision on this claim, however,[7] Troika leans heavily on *Martin v. Heinold Commodities, Inc.*, 139 Ill.App.3d 1049, 1054, 94 Ill.Dec. 221, 224, 487 N.E.2d 1098, 1101 (1st Dist.1985), which teaches "[a] commodities broker may be the fiduciary of his custom-

er in a broad sense or a limited sense." In the case of a nondiscretionary account, a broker's fiduciary duty is generally "limited to the completion of a transaction" (*id.*). As Troika would have it, *Martin, id.* at 1056–57, 94 Ill.Dec. at 225–26, 487 N.E.2d at 1102–03 (citations omitted) imposes a wide range of fiduciary duties on *all* brokers, including duties:

> to use reasonable efforts to give his customer information which is relevant to the affairs entrusted to him . . . [, and to] communicate those material facts within his knowledge which might affect his customer's decision concerning a pending transaction . . . , or in any way affect the transaction and the subject matter of his agency. . . . In addition, as an agent, the broker has a duty of good faith and loyalty toward his customer which prohibits him from discharging the duties of his position in such a manner as to make a secret profit for himself.

Troika prefers that opinion to the one that ensued on review, in which the Illinois Supreme Court reversed the Appellate Court in part, opining that a broker owes a fiduciary duty to its customer as an *agent*, but that such duty is limited to actions occurring within the scope of the agency (117 Ill.2d 67, 76–78, 109 Ill.Dec. 772, 776–77, 510 N.E.2d 840, 844–45 (1987)). Thus Troika's argument is simply a false reading of the *ultimate* decision in *Martin*.[8] Indeed, Troika's counsel implicitly recognize that when they are forced to discount as dictum (T.Mem. 5 n. 2) the Illinois Supreme Court's statement (*id.* at 79, 109 Ill.Dec. at 777, 510 N.E.2d at 845) in which it cites *Greenwood v. Dittmer*, 776 F.2d 785, 788

---

**6.** For simplicity this opinion cites to the parties' memoranda by their initials rather than employing the usual "P." and "D." for plaintiff and defendant (terminology that would be potentially confusing in dealing with a counterclaim). Thus, for example, Refco's Reply Memorandum becomes "R.R.Mem." (the second "R." standing for Reply).

**7.** Refco's Customer's Agreement (Counterclaim Ex. B ¶ 16) makes Illinois law dispositive, and both litigants have looked substantially to Illinois authority. Refco however has shown a much more eclectic tendency in calling upon decisions elsewhere (thus ignoring its own con-

tract provision), no doubt because the law in the Seventh Circuit and outside of Illinois is more favorable to its position than the *Martin* Appellate Court decision next referred to in the text.

**8.** Freudian theory would find significance in the fact that Troika's counsel misread even the *Martin* case name—they consistently refer to "Heinhold" rather than the correct name "Heinold." That seems to be a common error, though, cropping up even (!) in some judicial opinions. And besides, as the ensuing text discussion reflects, counsel's reading of the *Martin* case's holding is vulnerable on far more than a "falsus in uno, falsus in omnibus" basis.

(8th Cir.1985) favorably for the proposition that "a commodities broker has no fiduciary duty to his customer where the broker does not control the customer's account." Troika seems to have matters reversed: Given the partial reversal in *Martin,* plus the fact that the courts there were treating only with a broker's self-dealing,[9] what should be viewed as dictum is any overbreadth in the Appellate Court's language (and not the language or analysis of the Supreme Court).

Our Court of Appeals has given Illinois law just such a reading, favoring Refco's position here. *Heritage Capital,* 823 F.2d at 173—after citing the *Martin* Appellate Court decision—still holds that although a fiduciary relationship does exist between broker and client, a broker handling a nondiscretionary account is not "viewed as a fiduciary."[10] That same notion has been expressed elsewhere. Thus *Romano v. Merrill Lynch, Pierce, Fenner & Smith,* 834 F.2d 523, 530 (5th Cir.1987) says (contrasting discretionary and nondiscretionary accounts) that although "a broker does owe his client a fiduciary duty, ... the nature of [that duty] will vary, depending on the relationship between the broker and the investor."

And the inapplicability of broad fiduciary principles to situations such as the Refco–Troika relationship is consistent with Illinois law generally. As this Court pointed out (albeit in a non-broker context) in *Seaboard Seed Co. v. Bemis Co.,* 632 F.Supp. 1133, 1136 (N.D.Ill.1986), quoting *Carey Electric Contracting, Inc. v. First National Bank of Elgin,* 74 Ill.App.3d 233, 237–38, 30 Ill.Dec. 104, 108–09, 392 N.E.2d 759, 763–64 (2d Dist.1979):

A confidential or fiduciary relationship involves confidence and trust on one side and dominance and influence on the other....

\* \* \* \* \* \*

A confidential relationship only goes to a situation where one party, because of some close relationship, relies very heavily on the judgment of another.

Troika cannot invoke generalized fiduciary notions for its own benefit here. Both it and Refco operated sophisticated commodities businesses. Troika maintained a large non-discretionary account with Refco in gold futures and other commodities for over four years. Nothing in the Counterclaim raises a duty on Refco's part to warn or inform Troika of any information either favoring or opposing any transaction ordered by Troika, or to monitor the nature of Troika's daily transactions. At most Refco had a duty to make sure the Troika-ordered transactions were duly carried out. Hence Refco was not obliged to inquire as to the suspiciousness of a single day's transactions, especially during what was clearly a volatile period for the market.

As for any claimed Refco duty to inform Troika of its margin requirements, Troika clearly knew all along of the preexisting $5,000–per–contract requirement—in fact, it alleges its *own* policy was to maintain such reserves at all times (¶ 6). On the basis of its own knowledge, then, it was over $1.1 million delinquent in margin requirements ($1,325,000 less $208,000) by the time it completed its flurried activity on October 16—even without reference to any asserted duty on Refco's part to apprise Troika of the added deficit caused by the

---

9. Even in the most limited type of agency—the nondiscretionary account where the broker is simply called on to carry out its principal's orders—the concept of faithfulness to duty (what the law labels a "fiduciary" duty) operates to preclude the agent's dealing to its own advantage rather than its principal's.

10. Refco also places great emphasis on our Court of Appeals' pre-*Martin* decision in *Shearson Hayden Stone, Inc. v. Leach,* 583 F.2d 367 (7th Cir.1978). That case is startlingly similar to this one—a broker suing a customer for a debit balance, met with a counterclaim for

breach of fiduciary duty—and it supports Refco's position 100%. To be sure, the Court of Appeals does not identify what law provided the rule of decision there (though the case originated in Indiana, the broker claimed a violation of Chicago Board of Trade rules as well as the broker's own internal directives, and the opinion cited an Alabama District Court decision for the proposition at issue here). All the same, it certainly does not help Troika that our Court of Appeals has voiced a reading of fiduciary law so helpful to Refco in a case on all fours with this one.

CME Board's increase in the margin requirement. That renders Troika's claim suspect at best on grounds of materiality [11] —and there is really nothing to support Refco's claimed duty to inform either.[12]

\* \* \* \* \* \*

In sum, Troika has not sufficiently alleged the breach of any fiduciary duty owed by Refco. Count 5 must be and is dismissed.

### Fraud

■ Refco next asserts Counts 6, 7 and 8 fail under Rule 9(b) for failure to state with particularity the "circumstances constituting fraud." [13] On that score *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975) remains the seminal authority in this Circuit:

> Tomera need not aver defendant's scienter. Her first amended complaint notified defendants of the nature of her claims, a rule 10b–5 securities fraud, and it alleged the details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants. This is enough. More information can be gathered through discovery. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Though that standard has been elaborated by a variety of courts in a variety of different locutions, one employed by this Court in *Caliber Partners, Ltd. v. Affeld*, 583 F.Supp. 1308, 1311 (N.D.Ill.1984) (citations omitted) is useful for current purposes:

> To plead a cause of action for fraud, plaintiffs need not allege evidentiary de-

tails that will be used to support the claim at a later date.... They need only set forth the basic outline of the scheme, who made what misrepresentations and the general time and place of such misrepresentations.

Troika seeks to set forth a claim for fraudulent concealment in those terms. Refco did not inform Troika of the enlarged margin requirements on October 16 and 19 (¶ 16). Had Troika been adequately informed, it likely would have closed some or all of its S & P positions (¶¶ 50–51), which would have lowered the price on S & P Contracts (¶¶ 47–48). To that point the facts are "well-pleaded" in the legal sense. But then Troika goes on to allege that Refco withheld the information so Refco and its preferred customers could "trade ahead" of Troika—that is, so the preferred customers could sell *their* S & P Contracts before Troika's transactions further depressed the price (¶¶ 49, 51, 53, 56).

If that last assertion also qualifies as "well-pleaded," Troika has indeed stated the circumstances constituting fraud under the *Tomera* standard—the just-summarized brief story says it all. But Refco complains that part of Troika's pleading is asserted on information and belief, as to which the general rule is that such pleading will not satisfy Rule 9(b) (*D & G Enterprises v. Continental Illinois National Bank and Trust Co. of Chicago*, 574 F.Supp. 263, 267 (N.D.Ill.1983)). That proposition carries with it an obvious and necessary exception: Where matters are solely within the knowledge of the adverse

---

**11.** Troika went long in S & P Contracts even though its commitments placed it in known breach of its Customer's Agreement with Refco. That certainly appears to indicate no causal relationship between (1) Refco's nondisclosure of an even greater margin requirement (and hence the creation of an even greater breach on Troika's part) and (2) Troika's readiness to have entered into the transactions triggering the breach. This opinion does not rest on that premise, however, as is demonstrated by the arguendo acceptance of such a causal relationship at the beginning of the next section of this opinion.

**12.** Even on the sliding-scale approach to fiduciary duties suggested by the Appellate Court

opinion in *Martin*, it would be a real stretch to find the existence of a duty during the Friday, October 16 trading day to disclose an increase announced by the CME Board that very day to take effect the next trading day (Monday, October 19). Refco in fact informed Troika of the newly increased margin requirement on October 19, the day it took effect.

**13.** Count 6 alleges common law fraud, Count 7 deals with a fraud-based violation of the Commodities Exchange Act and Count 8 charges violation of the Illinois Consumer Fraud Act. This part of the opinion assumes Rule 9(b) applies to all three Counts.

party, such allegations may be made on information and belief *if and only if* they are accompanied by a statement of the facts on which the belief is founded (*id.* and authorities cited).[14]

Here the only element of fraud alleged on information and belief is Refco's asserted *motive.* To be sure, by definition that is a matter solely in the realm of Refco's knowledge (as is necessarily always the case with a party's intention). But Troika has not suitably identified the factual predicate for its stated belief that Refco deliberately withheld the new margin requirements from Troika to enable other Refco customers to trade ahead of Troika.

Of course this Court recognizes that if such a pleading requirement were applied stringently to every situation of claimed fraud, some plaintiffs might find themselves placed in an impossible Catch–22: unable to identify the facts showing fraudulent intent (and thus unable to stay in court in the face of a Rule 12(b)(6) motion) because those facts are necessarily known only to the party allegedly perpetrating the fraud, yet unable to learn those facts because discovery is available only to a party already in court.[15] In such a situation a court could well apply the Rule 9(b) requirement with somewhat greater flexibility.

But no such treatment is called for here:

1. If Troika's claim as to Refco's intention were an accurate one, that intention would surely have manifested itself in *conduct* on Refco's part (in the same way that intention is ordinarily deduced from objective evidence).

2. Yet Troika has not tendered any evidence even suggesting the presence of

any smoke, let alone suggesting any fire whose existence might be inferred from the presence of smoke. No litigant should be forced to deal with claims of fraud on the basis of unsupported speculation (this is, after all, the purpose of the Rule 9(b) particularity requirement; see, e.g., such cases (among a myriad of like holdings) as *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985); *Wayne Investment, Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13–14 (1st Cir.1984); and in this District, *Beck v. Cantor, Fitzgerald & Co.,* 621 F.Supp. 1547, 1552–53 (N.D.Ill. 1985); *McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 932 (N.D.Ill.1985)).

3. Because Troika will not be out of court if Refco's motion to dismiss is granted (for Counterclaim Counts 1 through 4 as well as Refco's Complaint remain viable), Troika may still have the opportunity through otherwise reasonable discovery to ascertain whether Troika can reasonably charge fraudulent intent on Refco's part.[16]

Accordingly Troika's Counterclaim fails to meet Rule 9(b)'s requirement, and Counts 6 through 8 must also fail at this stage.

### *Illinois Consumer Fraud Act*

█ Though that moots Refco's other quarrel with now-dismissed Count 8, the potential for its renewal justifies a brief look at that issue. Refco contends the Illinois Act is not available to redress a wrong of the type claimed by Troika. Illinois Act § 262 makes unlawful:

the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact,

---

**14.** That last limitation is hardly a surprising one. Although familiar phrases too often tend to lose their real meanings through sheer rote repetition, both "information" and "belief" are well-understood concepts that should be applied in their normal sense. It is surely understandable that a pleader's right to allege something "on information and belief" should be conditioned on the pleader's identification of the facts—the "information"—on which the asserted "belief" is based.

**15.** This Court has in the past addressed a similar *Catch–22–type* problem in a different context (see *Payne v. City of LaSalle,* 610 F.Supp. 606 (N.D.Ill.1985)).

**16.** No ruling is made or implied here as to whether Troika has made or can make a sufficient showing to justify such discovery, or as to the appropriate scope of such discovery if it should be granted. This opinion should not be mistaken for the issuance of a fishing license in that respect (see, e.g., *Wayne Investment,* 739 F.2d at 14).

with intent that others rely upon the concealment, suppression or omission of such material fact. . . .

Illinois courts have consistently interpreted the Act "to reach practices of the type which affect consumers generally" and not "as an additional remedy to redress a purely private wrong" (*Frahm v. Urkovich,* 113 Ill.App.3d 580, 586, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1st Dist.1983) and authorities cited).

First Refco contends Troika violates Rule 9(b) when it alleges injury to "other customers" of Refco only on information and belief (¶ 56). That echoes the type of deficiency dealt with in the preceding section.[17]

Second, *Exchange National Bank v. Farm Bureau Life Insurance Co. of Michigan,* 108 Ill.App.3d 212, 216, 63 Ill.Dec. 884, 887, 438 N.E.2d 1247, 1250 (3d Dist. 1982) holds as to the Illinois Act:

> In the absence of an allegation indicating such practices to be part of a pattern of defendant's ... activities, we believe Count V fails to state a cause of action. . . . Every individual breach of contract between two parties does not amount to a cause of action cognizable under the Act. . . . Such is not the intention of the [Act].

Troika must allege a pattern of concealment to assert a public wrong sufficient under the Illinois Act.[18] It has not done so, and that is an independent basis for dismissal.[19]

### Conclusion

Troika's Counterclaim Counts 5 through 8 are vulnerable to dismissal on varying grounds. Refco's motion to dismiss those counts under Rules 12(b)(6) and 9(b) is granted in its entirety.

---

**17.** Troika can draw no solace from *Barr Co. v. Safeco Ins. Co. of America,* 583 F.Supp. 248, 258 (N.D.Ill.1984). Even if *Barr* is viewed as a proper application of Rule 9(b) in light of the principles discussed earlier in the text (a question that need not be resolved at this point), Troika's allegations as to "others" are more speculative than those sustained by Judge Moran in *Barr.*

**18.** This Court has had occasion to deal with the applicability of *Frahm* and *Exchange National Bank* in diversity cases in this District Court in *Newman Green, Inc. v. Alfonzo–Larrain R.,* 590 F.Supp. 1083, 1086–88 (N.D.Ill.1984). Its conclusion there is applied here.

**19.** Another issue the parties debate is whether Refco's allegedly deceptive conduct is trade or commerce "directly or indirectly affecting the people of this State," as the Illinois Act requires. Mysteriously enough, Troika discusses that question only in terms of Refco's as-yet-unidentified other customers—not in terms of its own standing—and Refco's R.Mem. 11–12 accepts the challenge in those terms. But it would seem the relevant question is rather whether Hong Kong corporation *Troika* is within the scope of the intended coverage of the Illinois Act (see this Court's opinion in *Seaboard Seed,* 632 F.Supp. at 1140 & n. 7).