Maryann **BROWN**, Plaintiff,

v.

**SAINT ANTHONY HOSPITALS, a non-profit corporation d/b/a Saint Anthony Hospital North, Inc., Defendant.**

Civ. A. No. 93–K–595.

United States District Court, D. Colorado.

July 11, 1994.

George C. Price, Denver, CO, for plaintiff.

James J. Gonzales, David D. Powell, Holland & Hart, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This case is before me on the motion for summary judgment of Defendant, Saint Anthony Hospitals d/b/a Saint Anthony Hospital North, Inc. ("St. Anthony"). St. Anthony argues Plaintiff Maryann Brown's claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 presents no genuine issue of material fact. I agree and grant the motion. This case was set for oral argument, but after reviewing the briefs and the authorities cited therein I have determined that oral argument would not assist me materially in deciding the motion and therefore would constitute an unreasonable expenditure of time and expense to the parties. The setting for oral argument is accordingly vacated.

### I. *Facts.*

From 1981 through 1991, Brown was employed as an Intravenous ("IV") Services Department Nurse whose full time responsibility was to insert IV devices and to instruct paramedics and other nurses on how to do so. During that period, Brown did not function as a full-time medical/surgical staff nurse or a ward charge nurse and did not perform medical nursing duties on a full-time basis. About 1990, due to budget restraints, St. Anthony reduced its nursing staff and abolished the IV Services Department. As a result, by 1991, Brown's forty hour week IV nurse position was reduced to a twenty hour week position. To make up the remaining twenty hours, Brown worked in the nurse float pool, a group of nurses who perform nursing functions in various departments.

Brown was not being employed for enough hours in the float pool and requested and obtained a transfer to the Labor and Delivery, Obstetrics/Gynecology (OB/GYN) unit under the supervision of Anne Williams. Standard training and orientation procedures required all nurses assigned to the OB/GYN unit to demonstrate proficiency and competency related to the unit's services. Brown understood she and all other assigned nurses transferring to the OB/GYN would have to undergo the Medical/Surgical Performance Based Development System (PBDS) skills assessment evaluation. Brown failed to meet the OB/GYN orientation requirements and failed to pass the standard fetal monitoring test. On July 9, 1991, supervisor Anne Williams advised Brown she would not be retained in the OB/GYN unit due to her lack of proficiency in OB nursing services. Williams informed Brown she could remain assigned to the OB/GYN unit in an orientation status for an additional four weeks to allow her to find a position elsewhere in the hospital.

During the next four weeks, Brown applied for staff nursing positions in the float pool and psychiatric units and as a Home Health Services nurse. Home Health Services is a separate corporate entity functioning independently of St. Anthony and providing nursing care to bedridden patients at home. Home Health Services interviewed Brown but did not hire her. Brown maintains she was not told the reasons therefor. Lizanne Porter, Employee Services Specialist with St. Anthony states in her affidavit Brown was not hired because of the need for nurses with demonstrated medical/surgical nursing skills and experience. When Brown applied to the float pool, the pool's manager, Kay Pierson, advised her there were no current openings. The float pool serviced the OB/GYN unit, operating room, emergency room and psychiatric ward. Pierson knew Brown had failed to demonstrate required nursing proficiency to qualify for the OB/GYN unit. In 1990, Brown had failed to pass an EKG nursing proficiency test. Pierson informed Brown she was concerned about her medical nursing proficiency.

St. Anthony's nursing policy provided nurses seeking transfer into a different practice area may be required by the responsible manager to go through a PBDS skills assessment. The policy encouraged managers to require such test unless the transferring nurse had recently gone through such assessment. Brown had not recently undergone a PBDS assessment and was not exempt from the policy. Brown refused to go to the edu-

cation department and participate in a PBDS assessment.

On March 25, 1992, St. Anthony notified Brown "effective October 23, 1991, [she] voluntarily resigned [her] registered nurse position" by abandoning it. (Verified Memo Br. Supp. Def.'s Mot.S.J., Ex. I.) At that time, Brown had already been employed as a nurse for six months at Fitzsimmons Army Hospital. Brown understood St. Anthony's policy that: "Two consecutive no call/no show absences will be considered a self-termination by the employee." (*Id.*, Ex. K.)

## II. *Summary Judgment Standard.*

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering this motion, I must construe the factual record and reasonable inferences therefrom in the light most favorable to Brown, the non-moving party. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528 (10th Cir.1994). The mere allegation of a factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," to avoid summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

## III. *Merits.*

In *Cone v. Longmont United Hospital Association,* 14 F.3d at 529, the court outlined the burden shifting process in an age discrimination case. At the first stage, Brown must prove a prima facie case of discrimination. To do this, she must show (1) she is within the protected age group, (2) she was doing satisfactory work, (3) she was discharged, and (4) her position was filled by a younger person. *Id.* If Brown satisfies the prima facie requirements under the ADEA, the case enters the second stage where the burden of production moves to St. Anthony. At this stage, St. Anthony must present a legitimate, nondiscriminatory reason for its action. If St. Anthony articulates such rea-

son, the burden moves back to Brown who must show age was a determinative factor in St. Anthony's employment decision, or St. Anthony's explanation for its action was mere pretext. Failure to come forward with evidence of pretext will entitle St. Anthony to judgment. *Id.*

St. Anthony argues Brown has failed to establish a prima facie case of discrimination and, legitimate business considerations, not Brown's age were determining factors concerning St. Anthony's actions. St. Anthony concedes Brown falls within the age group protected by ADEA in that, even when she was first employed by St. Anthony, Brown was over the age of forty. However, St. Anthony maintains Brown has failed to satisfy the other three elements of a prima facie case of age discrimination.

Brown maintains St. Anthony has an unwritten "phase out" policy that it used to rid itself of highly paid older nurses. She asserts the circumstances surrounding her failure to pass the fetal monitoring test were discriminatory and were the beginning of discriminatory actions against her based on age. Brown argues she was unfairly treated when transferred to the OB/GYN unit and was not given proper training afforded to younger nurses new to the unit. She maintains, unlike other nurses new to the unit, she was not given advance notice of the fetal monitoring test and she was required to take the test at two o'clock in the morning. Brown states, after Williams set her score, she told Brown she would have another opportunity to take the test. She points out the relevant hospital policy required an employee who had failed the fetal monitoring test to be given study assignments and allowed to retake the test one time only. (Pl.'s Resp. Def.'s Mot.S.J., Ex. 2.) Brown notes, although Williams told her she would be allowed to take the test again, within days, Williams informed her she would not be retained in the unit because of her low score on the fetal monitoring test. It is Brown's position she was asked to go through the PBDS assessment, despite her having recently worked in the float pool with favorable appraisals, because she failed the fetal monitoring test. Brown contends once her transfer

applications were denied and she refused to go through the PBDS assessment, she was not given any new assignments and was never called in to work. She maintains she was constructively discharged from St. Anthony.

Even construing the factual record in the light most favorable to Brown, it is questionable whether Brown has presented evidence to satisfy the remaining three elements of a prima facie case, namely that she was doing satisfactory work, she was discharged and her position was filled by a younger nurse. Brown makes the following assertions concerning treatment of younger nurses:

22. Upon information and belief, younger nurses (nurses under 40) were given at least one day advance notice of the fetal monitoring test. Upon information and belief, younger nurses (nurses under 40) were not forced to take the fetal monitoring test at 2:00 A.M.

. . . .

26. On information and belief, younger nurses (nurses under 40) were not subjected to the same discriminatory treatment as I was and that a younger nurse was hired into the OB/GYN unit.

. . . .

33. . . . . Upon information and belief, shortly after I was told that there were no positions available in the float pool, another younger nurse was hired into the Float Pool.

(Pl.'s Resp. Def.'s Mot.S.J., Ex. 1.)

Prefacing her allegations concerning better treatment of younger nurses with the words "upon information and belief" indicates these statements are based not on Brown's first-hand knowledge. See Black's Law Dictionary, 779 (6th ed. 1990). The following remarks have been made in the context of pleading:

Although familiar phrases too often tend to lose their real meanings through sheer rote repetition, both "information" and "belief" are well-understood concepts that should be applied in their normal sense. It is surely understandable that a pleader's right to allege something "on information and belief" should be conditioned on the pleader's identification of the facts—the

"information"—on which the asserted belief is based.

Refco, Inc. v. Troika Inv. Ltd., 702 F.Supp. 684, 689 n. 14 (N.D.Ill.1988). These comments apply a fortiori to an opposing affidavit in a summary judgment motion which "shall set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Brown's affidavit reflects she has no first hand knowledge of preferential treatment afforded younger nurses concerning the fetal monitoring test or of the hiring of younger nurses into the OB/GYN unit or float pool. As such, her testimony to this effect would not be admissible evidence.

Even assuming Brown has established a prima facie case, she cannot meet her burden of discrediting St. Anthony's legitimate reason for terminating her. I need not decide St. Anthony's proffered reason—assessing the proficiency of medical/ surgical nursing skills and ensuring patients receive competent care—is credible or sufficient. Cone, 14 F.3d at 530. St. Anthony's burden is

simply to demonstrate a legitimate, nondiscriminatory reason for its actions . . . The defendant having done so, the plaintiff must present enough evidence to support an inference that the employer's reason was merely pretext, by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."

Id., quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

I need not resolve whether Brown has presented a prima facie case of discriminatory treatment, because she did not raise an inference that St. Anthony's articulated non discriminatory explanation for its employment decisions was pretextual or that age discrimination was a determinative factor in such decisions. See Cone, 14 F.3d 526, 533. She has produced no evidence showing St. Anthony's decisions not to retain her in the OB/GYN unit and to require her to undergo a PBDS skills assessment were motivated by age discrimination. She makes the bald assertion St. Anthony had a "phase out policy" but presents no supportive evidence of the

kind listed in Rule 56(c). Brown's mere conjecture that St. Anthony's explanation is a pretext for intentional age discrimination is an insufficient basis for denial of summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988). She has not created a genuine issue concerning the proffered reasons for what she calls her constructive termination. To defeat a summary judgment motion, Brown would have to "simply point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." *Cone,* 14 F.3d at 530. She has not done so. Even though all doubts must be resolved in Brown's favor, allegations alone will not defeat summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

IV. *Conclusion.*

Reviewing the facts in the light most favorable to Brown, she has not presented sufficient evidence to support an inference St. Anthony was motivated by age discrimination. Accordingly,

IT IS ORDERED THAT St. Anthony's Motion for Summary Judgment is GRANTED;

IT IS FURTHER ORDERED THAT this case is DISMISSED. Each party to bear her or its own costs.