Rebecca **REYHER** and Ruth Gannett,
Plaintiffs,

v.

**CHILDREN'S TELEVISION WORKSHOP**
and Tuesday Publications, Inc.,
Defendants.

No. 72 Civ. 627 (JMC).

United States District Court,
S. D. New York.

Jan. 6, 1975.

See also D. C., 377 F.Supp. 411.

Stoll & Stoll, New York City (Samuel J. Stoll and Robert S. Stoll, of counsel), for plaintiffs.

Coudert Brothers, New York City (Eugene Girden and Paul B. Jones, New York City, of counsel), for defendants.

CANNELLA, District Judge:

This copyright infringement action was tried to the Court without a jury. After consideration of the facts presented and the law applicable thereto, the Court finds for the defendant and dismisses the complaint.

The plaintiffs herein, Rebecca Reyher and Ruth Gannett, the copyright holders, and respectively the author and illustrator of a children's book entitled, "My Mother Is the Most Beautiful Woman in the World," allege. that the defendants, Children's Television Workshop ("CTW") and Tuesday Publications, Inc. ("TPI"), have copied said book and, have, thereby infringed upon plaintiffs' copyright. The alleged infringement occurred when CTW, a non-profit corporation, engaged in, among other activities, the production of the educational children's television program known as "Sesame Street", produced and caused to be shown on television a segment of the Sesame Street program entitled "The Most Beautiful Woman in the World" and when, thereafter, CTW caused arti-

cles to be published in both the English and Spanish language versions of the Sesame Street Magazine entitled "The Most Beautiful Woman in the World." Finally, it is alleged that TPI infringed upon plaintiffs' copyright by causing the publication, in an edition of "Tuesday at Home", of a story entitled "The Most Beautiful Woman in the World".

Plaintiffs' book, which was copyrighted in 1945, tells a simple but pointed story. In essence, it relates the tale of a small Russian peasant girl who is lost in the Ukraine. The little girl, having been separated from her mother, makes her way to a village where she tells the inhabitants only that "my mother is the most beautiful woman in the world." Upon hearing this, the villagers proceed to search the surrounding area and to bring all of the local beauties to see the little girl in the hope that one of them will turn out to be her mother. Eventually, the little girl's mother does appear, she is, to the villagers' surprise, a rather homely looking woman. The little girl, however, is not surprised and tells the villagers "this is my mother, the most beautiful woman in the world." The moral, as the village leader points out, is that "we do not love people because they are beautiful, but they seem beautiful to us because we love them."

It is clear to this Court, having viewed the relevant "Sesame Street" segment and read the three magazine articles involved, that there is a substantial similarity between plaintiffs' copyrighted book and defendants' allegedly infringing works. Although the only phrase which appears in both works is "Once upon a time, long, long ago," and although there is little, if any, actual paraphrasing of plaintiffs' book in defendants' works, no individual comparing the works at bar could help but conclude that they are substantially similar. While defendants' rendition of the story takes place in a different locale and is told with fewer frills than plaintiffs', both stories present an identical sequence of events.

Nonetheless, before it can be determined whether there has been an infringement of plaintiffs' copyright, the Court must first determine exactly what is protected by that copyright. In the instant case, we have a book which the author candidly admits is based upon a story which was told to her by her Russian mother. It is the belief of plaintiff Reyher (although no direct evidence was adduced to this effect) that the story told to her by her mother is in fact a Russian folk tale. It is clear from plaintiff's testimony that the story line as it appears in her copyrighted book is substantially taken from, if not identical with, the story told to her by her mother. Mrs. Reyher testified that she had "taken a storyline, but I have adapted it and that's a synonym for retold and that's why I raise no objection to retold. It's my treatment. That's what this book is, even though it was my mother's story." (Tr. 120)

Plaintiff did not testify that she had added anything to the story or changed it in any significant way. In fact, the plaintiff indicated that she wrote the book using a Russian dictionary. This clearly suggests a process whereby plaintiff attempted to recall the story as told to her by her mother in Russian, and then to translate that recollection into English. As plaintiff Reyher herself explained the process,

[i]t not only required a translation, it required two volumes of a Russian dictionary to check certain words and impressions that I had because this was an impression rather than a literal translation. Anything that I used that she [her mother] had told me might have been a translation, but it also was primarily a mood and mine was an interpretation. (Tr. 71–72)

It is thus clear to the Court that plaintiffs' book is a "derivative" work. That is, it has been "substantially copied from a prior work" in the public domain. (1 M. Nimmer on Copyright § 39 at 166). The accepted rule as restated in the proposed copyright law (*see* Goodis v. United Artists Television,

Inc., 425 F.2d 397, 402–403 (2d Cir. 1970); Rohauer v. Killiam Shows, Inc., 379 F.Supp. 723, 728 (S.D.N.Y.1974)), is that "[t]he copyright in a derivative work extends only to the material contributed by the author of such work, as distinguished from the pre-existing material employed in the work. . . ." As one court has put it, if the work allegedly infringed upon is of a derivative nature,

> [t]he plaintiff . . . should be expected to state to us what it is in the story that is copyrightable as new and novel and what part of such material, if any, has been misappropriated by the appellant.

> . . . .

> In the case at bar, if it be assumed that there are such similarities between [the two stories] as to provoke in the casual observer the consciousness that there is such a similarity between them, and that copying may be inferred therefrom, we are still confronted with the fact that mere similarity does not necessarily involve literary piracy or an infringement of a copyright. Such similarities then as exist would require further analysis to determine whether or not they are novel in the story and thus copyrightable. The copyright of the story only covers what is new and novel in it, so that the question of infringement involves a consideration of what is new and novel in the story to which the author has acquired a monopoly which has been misappropriated by another.

Harold Lloyd Corp. v. Witwer, 65 F.2d 1, 22–24 (9th Cir. 1933). *See also* Axelbank v. Rony, 277 F.2d 314, 317 (9th Cir. 1960).

■■ Given the derivative nature of plaintiffs' work, the plaintiffs can prevail only if defendants have copied material which was plaintiffs' "original intellectual product" as opposed "to the old public domain elements of which [the author] has made use." Costello v. Loew's Corp., 159 F.Supp. 782, 784 (D. D.C.1958). Here, Reyher's "original in-

tellectual product" surely includes the translation of her mother's story, and it just as surely does *not* include the plot or sequence of events appearing therein. There is no allegation and the facts will not support a finding that the defendants have either copied plaintiffs' work verbatim, or have paraphrased it. The most that could be said is that they have read the plaintiffs' work and have retold the story in their own words. Such a finding will not, given the derivative nature of plaintiffs' work, support a cause of action for copyright infringement. The defendants have not infringed upon any substantial portion of plaintiffs' copyrighted book in which plaintiffs can claim a proprietary interest granted by the copyright laws. In a sense, the defendants have done nothing more than make their own variation of the story Mrs. Reyher's mother had told her as a child. There being no claim by Mrs. Reyher that her mother's story is copyrighted or that it is entitled to any form of protection, the defendants have the same right to make use of it as does Mrs. Reyher, herself. Thus, defendants' use of a story line which is substantially similar to that appearing in plaintiffs' copyrighted book does not give rise to a cause of action under the copyright laws.

■ In addition to the claim that the defendants have copied the story appearing in "My Mother is the Most Beautiful Woman in the World," plaintiffs allege that a drawing by Tybor Gergley, depicting the reunion scene at the conclusion of the story, appearing in defendant TPI's publication "Tuesday At Home," infringed upon an illustration by Ruth Gannett appearing in plaintiffs' copyrighted book. The Court, having compared the Gannett drawing with that by Tybor Gergley, finds that the Gergley illustration does not infringe upon Gannett's work.

In determining whether or not the Gergley illustration of the reunion scene is an infringement of Gannett's drawing of the same event, it is helpful to recall the words of Judge Learned Hand in a

872

case involving the infringement of a textile design copyright:

> The test for infringement of a copyright is of necessity vague. In the case of verbal "works" it is well settled that although the "proprietor's" monopoly extends beyond an exact reproduction of the words, there can be no copyright in the "ideas" disclosed but only in their "expression." Obviously, no principle can be stated as to when an imitator has gone beyond copying the "idea," and has borrowed its "expression." Decisions must therefore inevitably be *ad hoc*. In the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more intangible. No one disputes that the copyright extends beyond a photographic reproduction of the design, but one cannot say how far an imitator must depart from an undeviating reproduction to escape infringement.

Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960).

Although the two illustrations here at issue do evince more than a passing similarity (in both the reunited mother and child are depicted running toward each other with arms similarly outstretched, in both the child's feet are positioned with the left foot raised in a similar fashion, finally, in both the posture of the mother and the relative positioning of the mother and child are similar), it is this Court's finding that the differences between the two (the characters in the more impressionistic Gergley illustration are black Africans dressed in their native garb, while in the Gannett drawing they are Caucasians in Russian peasant outfits, additionally, the Gergley child is a boy while Gannett's is a girl, and the Gergley mother has a package on her back and a stick at her feet while the Gannett mother is shown without accoutrements) are so substantial that the "average layman would indeed detect numerous differences . . . which tend to eliminate any substantial similarity of protected expression." Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc., 509 F.2d 64 at 65 (2d Cir. 1974) (footnote omitted). Thus, it cannot be said that the Gergley illustration infringes upon Gannett's work.

For the reasons set forth above, it is hereby ordered that the complaint be and hereby is dismissed, with costs, but without attorney's fees, to the defendants.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

Enter judgment.