ARTHUR RETLAW & ASSOCIATES,
INC., a corporation, Plaintiff,

v.

TRAVENOL LABORATORIES, INC., a
corporation, Baxter Travenol Laborato-
ries, Inc., a corporation, and Frank J.
Corbett, Inc., a corporation, Defend-
ants.

No. 80 C 3317.

United States District Court,
N.D. Illinois, E.D.

Jan. 19, 1984.

Edward J. Lesniak, Burke, Griffin, Chomicz & Wienke, Chicago, Ill., for plaintiff.

W. Thomas Hofstetter, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

ROSZKOWSKI, District Judge.

This is a case for breach of alleged contractual obligations. Plaintiff, Arthur Retlaw & Associates, Inc., asserts that defendant had breached an oral agreement to the effect that as long as the newsletter THYROID TODAY was printed by the defendants, TRAVENOL LABORATORIES, INC. or BAXTER TRAVENOL LABORATORIES, INC., the plaintiff would prepare and print the newsletter. The jurisdiction of this court is not contested.

## FINDINGS OF FACT

Plaintiff, Arthur Retlaw & Associates, Inc., ("Retlaw"), located in Evanston, Illinois, is engaged in the business of publishing medical magazines and periodicals. Retlaw is the parent company of Ethical Communications, Inc. ("Ethical"), an advertising agency.

Travenol Laboratories, Inc. ("Travenol") is a subsidiary of Baxter Travenol Laboratories, Inc. ("Baxter"), a Delaware corporation, and Flint Laboratories ("Flint") is a division of Travenol. Travenol is engaged in the manufacture and sale of pharmaceutical and medical supplies, with a principal place of business located in Deerfield, Illinois.

Frank J. Corbett, Inc. ("Corbett") is a corporation organized under the laws of the State of Illinois and is engaged in the business of an advertising agency, with its principal place of business located in Chicago, Illinois.

Retlaw and Ethical were retained by Travenol in 1976 to arrange for the printing and distribution of the newsletter THYROID TODAY on behalf of Travenol's Flint Laboratories Division. Travenol reimbursed and compensated Retlaw for all monies and efforts expended by Retlaw in arranging for the printing and distribution of the issues of the THYROID TODAY newsletter. All editorial, publication and distribution costs for the THYROID TODAY newsletter were paid by Travenol. Eighteen issues of the THYROID TODAY newsletter were published by Retlaw from August 1977 through January 1980 and were printed by a third party obtained by Retlaw at Travenol's expense.

Dr. Oppenheimer was and continues to be the editor of the THYROID TODAY newsletter, and has served in that capacity from the beginning.

Travenol decided to use another agency, Frank J. Corbett, Inc., for the publication and distribution of the THYROID TODAY newsletter, and notified Retlaw accordingly in or about September 1979. Since February 1980, Corbett has arranged for the printing and distribution of THYROID TODAY for and on behalf of Travenol. The THYROID TODAY newsletter as presently published continues to have the same type of educational format and appearance as it had from the beginning.

Retlaw's trial testimony generally focused on two main contentions: First, that the name THYROID TODAY was suggested by Walter Suberg, the president of the plaintiff corporation, to Flint in 1976 and that it was not the same name as "THYROID TODAY: An Endocrine Update" that had been and was being used by Flint for both its film and monograph; and second, that Travenol agreed to have Retlaw handle the newsletter for as long as it was printed, and that as soon as Travenol ceased using Retlaw to prepare and print it, the ownership in the title would "revert back to Retlaw."

In support of Retlaw's first contention, Suberg testified that the name of Travenol's earlier monograph and film was different from the name on the newsletter merely because the descriptive words "An Endocrine Update" appeared underneath the main block letters "THYROID TODAY."

To support Suberg's contention the plaintiff offered a letter written by Suberg which was sent to Steve Freeman in March 1978.[1] There was no written agreement or express consent signed by Flint or Travenol incorporating any such agreement between Suberg and Flint.

After the first six issues of the THYROID TODAY newsletter were published, Suberg testified that he agreed to change the copyright notice to show Travenol Laboratories as the copyright owner at Travenol's request. Suberg asserts, however, that he was assured by Messrs. Weathers-

by and Schoeneberger of Flint that, as long as the newsletter THYROID TODAY was printed by Flint, Retlaw would publish it. Suberg testified that Weathersby and Schoeneberger told him that when Travenol "got tired of it," the rights to the newsletter would revert back to Retlaw.

In its initial pleadings and the pretrial order, Retlaw appeared to base its ownership in the THYROID TODAY newsletter on four theories: (1) misappropriation; (2) copyright in the concept and title; (3) trademark rights in the name THYROID TODAY; and (4) the existence of a contractual arrangement for the perpetual printing of the newsletter.

In the evidence presented at trial, Retlaw appears to have abandoned several of its earlier theories and instead concentrates its efforts in proving its alleged copyright ownership in the newsletter and the existence of an enforceable agreement to allow Retlaw the perpetual right to print the newsletter.

The evidence at trial showed that in 1973 a monograph and film were prepared by Medcom Inc. at the instance and expense of Travenol. The title of both the monograph and film was "THYROID TODAY: An Endocrine Update." The evidence revealed that the THYROID TODAY film was shown approximately 4,000 times to an audience of some 200,000 persons during the first six years of the film's production. The defendant still receives requests for the film and that six institutions hold permanent loan copies of the film for showing. All of Travenol's Flint Laboratories Division sales representatives still have copies of the THYROID TODAY film for use during sales presentations.

The THYROID TODAY monograph is still being distributed to physicians, hospitals, medical schools and other interested persons and organizations throughout the United States. Over 80,000 copies of the THYROID TODAY monograph were

---

1. Retlaw's feeble attempt at differentiating these names was countered by the testimony of witnesses Liz Wills and Gladys Anderson, both of whom testified that the persons who called for the film or the monograph generally referred to them by the name "THYROID TODAY."

shipped during the years 1973–1979, and more than 5,000 additional copies have been shipped since then.

In 1976, Travenol had discussions with its advertising agency, Ethical Communications, and decided to distribute a newsletter, entitled THYROID TODAY, to physicians and other persons interested in the field of thyroid medicine. Dr. Oppenheimer, one of the original contributors to the THYROID TODAY monograph, was selected by Travenol to be the editor of the newsletter. Dr. Oppenheimer was authorized to solicit articles from physicians in the field of endocrinology. Travenol paid for Dr. Oppenheimer's services as well as for the articles contributed by outside authors. Travenol also paid its advertising agency, Ethical Communications, for all monies and efforts expended by Ethical or Retlaw for the printing and distribution of the THYROID TODAY newsletter from the first issue until the account was turned over to the successor agency, Corbett, in 1980.

The first six issues of Travenol's THYROID TODAY newsletter showed Arthur Retlaw & Associates in the copyright notice. This was observed by Retlaw's legal department in March 1978, and Steve Freeman, the Senior Product Manager for Travenol, was asked to have the notice corrected in future issues to reflect the true copyright proprietor, namely, Travenol. Freeman met with Suberg, and asked that the copyright notice be changed to show Travenol. Freeman confirmed his discussion in his letter of March 10, 1978 to Suberg.

Freeman testified that he recalled receiving Suberg's letter of March 17, 1978 and noted that it made a reference to future publication of the THYROID TODAY newsletter, even though that subject had not been mentioned during his meeting with Suberg. Freeman further testified that he did not reply to Suberg's letter, since he viewed the letter as self-serving and nonsensical and the matter of the copyright notice, with which he was concerned, had been corrected. All subsequent issues of the THYROID TODAY newsletter bore the name of Travenol Laboratories in the copyright notice.

In 1979, Travenol began experiencing some difficulties with the performance of Ethical Communications. Gladys Anderson testified that Fred Parker, her main contact with the agency, left in early 1979. After his departure, the agency began to get behind in its printing schedule and was failing to send final copies of the manuscripts to Dr. Oppenheimer for his review.

In August 1979, Carter Eckert, Vice President of Travenol's Flint Laboratories Division, informed Suberg that Flint was looking for a new advertising agency. In mid-September, Eckert confirmed in writing that Flint would be discontinuing the services of Ethical Communications at the end of the year. On October 30, 1979, Suberg responded by wishing Flint "the best of luck and success in future endeavors."

The evidence at trial clearly showed that the advertising agency, Ethical Communications, was hired by Travenol to handle the printing and distribution of the newsletter THYROID TODAY, for and on behalf of Travenol's Flint Laboratories Division. All costs relating to the publication of the newsletter, plus an additional profit for each issue, were paid by Travenol to the agency.

### CONCLUSIONS OF LAW

Section 201 of the Copyright Act of 1976 provides:

> In the case of work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright. 17 U.S.C. § 201(b).

■ Under this principle, known as the "work-for-hire" doctrine, when an employer hires an employee or an independent contractor to produce a work, there is a presumption that the copyright belongs to the person at whose "instance and expense"

the work was done. *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565 (2nd Cir.1966); *Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298 (9th Cir.1965); *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213 (2nd Cir.1972) *cert. denied*, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972); Nimmer, *Nimmer On Copyright*, § 5.03[B], at 5–13 (1983 ed.). The presumption may only be rebutted by an express "contractual reservation to the contrary." *Kinelow Publishing Co., Inc. v. Photography in Business, Inc.*, 270 F.Supp. 851 (S.D.N.Y.1967); *Lin-Brook Builders Hardware*, 352 F.2d at 300.

In the present case, Retlaw was employed by Travenol to publish the newsletter THYROID TODAY and was paid in full for all work done in printing and publishing it. Thus, under the "work-for-hire" doctrine, Travenol is the owner of the copyright to the THYROID TODAY newsletter.

■ Plaintiff Suberg testified that there was an "understanding" that the copyright in the newsletter belonged to Retlaw. However, this "understanding" was never put into writing. Thus, plaintiffs claim that this oral "understanding" satisfied the requirement that the parties have "expressly agreed otherwise in a written instrument" that Retlaw would own the copyright in the THYROID TODAY publication. Nor does Suberg's March 17, 1978 letter to Freeman, signed only by Suberg, comply with the statute's requirement that the agreement be a written instrument signed by both parties. 17 U.S.C. § 201. The letter is merely a self-serving statement which carries little weight with this court.

■ Retlaw's unilateral act of placing its own name in the copyright notice does not change the fact that an employment relationship existed and that any copyright for the content of the first six issues of the newsletter belonged to Travenol. *See Brattleboro Publishing Co.*, 369 F.2d at 568, n. 3; *Yardley v. Houghton Mifflin Co., Inc.*, 108 F.2d 28 (2nd Cir.1939) *cert. denied*, 309 U.S. 686, 60 S.Ct. 891, 84 L.Ed. 1029, Nimmer, *Nimmer on Copyright*, § 5.03[B], at 22, n. 61 (1983 ed.).

The fact that Retlaw's name appeared in the copyright notice of the first six issues of the newsletter does not transfer ownership of title to the newsletter to the plaintiff. Section 406(a) of the Copyright Act of 1976 specifically provides:

*Error in Name:* Where the person named in the copyright notice on copies of phono-records distributed by authority of the copyright owner is not the owner of the copyright, the ownership of the copyright is not affected. 17 U.S.C. § 406(a).

The fact that the copyright notice on the first six issues of the newsletter contained Retlaw's name, instead of the name of the owner of the copyright, does not affect Travenol's rights in the copyright of those issues. *Fantastic Fakes Inc. v. Pickwick*, 661 F.2d 479 (5th Cir.1981); *Goodis v. United Artists Television Inc.*, 425 F.2d 397 (2nd Cir.1970).

■ Moreover, one cannot claim copyright in a title. *Kirkland v. National Broadcasting Co., Inc.*, 425 F.Supp. 1111 (E.D.Pa.1976), *aff'd mem.* 565 F.2d 152 (3d Cir.1977); *Duff v. Kansas City Star Company*, 299 F.2d 320 (8th Cir.1962); Nimmer, *Nimmer on Copyright*, § 2.16 (1983 ed.). As is shown by plaintiff's own trial exhibit No. 8 (Copyright Reg. No. 256,092, p. 4), the Copyright Office regulations state that "the title of a periodical cannot be copyrighted. Copyright in an issue ... does not extend to the title or name under which the periodical is published."

■ Retlaw also contended at trial that it was responsible for editing the articles in the newsletter and that it controlled the content and format of each issue. Even if this were so, this fact alone is not indicative of any right to the copyright in the publication. Plaintiff in the present case has failed to prove that it performed services for Travenol other than as work-for-hire.

■ It is clear that ownership of a trademark is governed by priority of use. *Hanover Star Milling Company v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed.

713 (1916); *United Drug Co. v. Theodore Rectanus Company,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918). Travenol's continuous use of the mark THYROID TODAY for a film and monograph since 1973 clearly make it the prior user and, therefore, the owner of that mark for medical publications.

■ Even if Retlaw had conceived of the name THYROID TODAY, it would have attained no ownership rights in the mark through mere conception. *Gordon Bennett & Associates, Inc. v. Volkswagen of America, Inc.,* 186 U.S.P.Q. 271 (D.C.Cal. 1975); *LaMur Inc. v. International Pharmaceutical Corporation,* 199 U.S.P.Q. 612 (T.T.A.B.1978). *Selfway, Inc. v. Travelers Petroleum, Inc.,* 579 F.2d 75 (C.C.P.A. 1978).

■ In addition to being the prior user, Baxter is also the owner of a federal trademark registration for the mark THYROID TODAY for medical publications (Reg. No. 1,166,483). Baxter's registration is *prima facie* evidence of its right to the exclusive use of the mark THYROID TODAY for newsletters and books containing medical information. 15 U.S.C. § 1115. Retlaw has presented no evidence to rebut this statutory presumption.

■ To sustain a cause of action for misappropriation of an idea, a plaintiff must show that: (1) the idea was novel; (2) the disclosure was made in confidence; and (3) the idea was adopted and independently used by the defendant. *Capital Films Corporation v. Charles Fries Products, Inc.,* 628 F.2d 387 (5th Cir.1980); *Marcus Advertising, Inc. v. M.M. Fisher Associates, Inc.,* 444 F.2d 1061 (7th Cir.1971); *Mitchell Novelty Co. v. United Mfg. Co.,* 199 F.2d 462 (7th Cir.1952).

Retlaw has wholly failed to meet any of these three requirements.

This court concludes that the arrangement between the plaintiff and defendants for the distribution of the publication THYROID TODAY conferred no property rights on the plaintiff in the name THYROID TODAY. The plaintiff has shown no

right to relief under any applicable theory of law.

The defendants' request for attorneys fees in accordance with Title 15 U.S.C. § 1117 is denied.

Accordingly, judgment is hereby entered in favor of the defendants' and against the plaintiff.