Charles W. TERRELL and Karen Terrell, Plaintiffs,

v.

John H. CHILDERS, Michael Childers, Frank Schuette, Jr., Joann Childers, Elwood Kreger, Talent Services, Inc., an Illinois corporation, and Bercoon, Weiner, Glick & Brook, an Illinois corporation, Defendants.

No. 93 C 2460.

United States District Court,
N.D. Illinois,
Eastern Division.

March 27, 1995.

Gary Lee Starkman, Brian Alan Sher, Ross & Hardies, P.C., Chicago, IL, for Charles W. Terrell and Karen Terrell.

Robert K. Blain, Law Offices of Robert K. Blain, Chicago, IL, for John H. Childers, defendant Michael J. Childers, Frank Schuette, Jr. and Talent Services, Inc.

George William Spellmire, David Matthew Schultz, Hinshaw & Culbertson, Chicago, IL, for Elwood Kreger and Bercoon, Weiner, Glick, and Brook.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Charles and Karen Terrell filed this action against John Childers, Michael Childers, Frank Schuette, JoAnn Childers, Elwood Kreger, Talent Services, Inc., and Bercoon, Weiner, Glick & Brook, alleging violations of various federal and state laws. In addition, defendant John Childers filed a counterclaim alleging breach of fiduciary duty and a third party beneficiary breach of contract claim. Presently before the court is plaintiffs' motion to dismiss defendant John Childers' amended counterclaim, defendants' motion to strike, and plaintiffs' motion for collateral estoppel. For the reasons set forth below, plaintiffs' motion to dismiss is granted in part and denied in part, defendants' motion to strike is granted in part and denied in part, and plaintiffs' motion for collateral estoppel is granted in part and denied in part.

### I. Background[1]

In 1985, Charles Terrell, John Childers, and several other individuals for whom Childers provided investment advice formed

---

1. A more complete factual background can be found in this court's opinions of October 20, 1993 and November 29, 1993, denying defendants' motion to dismiss the complaint.

a partnership, 2134 Pine Street Associates. The partnership purchased a historic building in Philadelphia and converted the property to six condominium units. Pursuant to the investors' agreement, each investor purchased all or a portion of a unit, and was to pay the same percentage of the mortgage as he had ownership interest in the building. As security for payment, however, the mortgagee required that all of the investors execute a mortgage covering the entire property. As a result, although Terrell's ownership interest was limited to 55% of Unit 6, all of the investors (including Terrell and Childers) signed the mortgage covering each unit.

In the late 1980s, some of the investors were unable to make their payments. According to the counterclaim, some of the investors, including Terrell, loaned the financially troubled investors money to make their mortgage payments. Childers asserts that in 1992, Terrell began demanding repayment of the loans from Childers and Talent Service, Inc ("TSI"). Childers and TSI refused, since they had not assumed any liability on the notes from the investors to Terrell. In response to this refusal, Terrell stopped making mortgage payments on the Pine Street property, allegedly prompting the assignee of the original mortgage, Bankers Trust Company, to bring a foreclosure action in Philadelphia. In addition, Terrell filed the present action, and Childers subsequently filed a counterclaim, alleging breach of fiduciary duty and a third party beneficiary breach of contract claim.

## II. Motion to Dismiss Standard

 A motion to dismiss should not be granted unless it "appears beyond doubt that the [counter-plaintiff] can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the [counterclaim] as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos*

*v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth*); *see also Refco, Inc. v. Troika Inv. Ltd.*, 702 F.Supp. 684, 685 n. 2 (N.D.Ill.1988).

## III. Discussion

A. Motion to Dismiss Amended Counterclaim

 Counter-defendants Charles and Karen Terrell initially move to dismiss Childers' third party beneficiary claim. In *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498 (1931), the Illinois Supreme Court set forth the standard for third party beneficiary suits:

> The rule is settled in this state that, if a contract be entered into for a direct benefit of a third person not a party thereto, such third party may sue for breach thereof. The test is whether the benefit to the third person is direct to him arising from the contract. If direct, he may sue on the contract, if incidental he has no right of recovery thereon.

*Id.* 178 N.E. at 501. Childers asserts that, because each of the mortgages is "cross-collateralized" among all of the investors, each investor is a third party beneficiary of all of the mortgages. The fatal flaw in Childers' theory, however, is that third party beneficiary status is only afforded to a person who is "not a party" to the contract. *Id.* A copy of the mortgage for Unit 6, which Childers attached to his counterclaim, reveals that *all* of the investors signed the mortgage document as borrowers and general partners of 2134 Pine Street Associates. Because every partner is an undistinguished signatory to the mortgage, they are likewise all parties to the mortgage. And as parties, they, by definition, can not claim third party beneficiary status. *See id.* Accordingly, counter-defendants' motion to dismiss Count II is granted.

 The Terrells also move to dismiss Childers' counterclaim for breach of fiduciary duty. They assert that Childers was the dominant party in the partnership, and therefore has the burden of demonstrating the fairness of the transaction at issue before he can state a claim of breach of fiduciary duty by the Terrells. *See Bandringa v.*

*Bandringa,* 20 Ill.2d 167, 174, 170 N.E.2d 116 (1960). In addition, the counter-defendants maintain that Childers defrauded them in connection with the Pine Street transaction, and that Charles' action in refusing payment on the mortgage was his effort to mitigate damages in the face of fraud. Both of these arguments, however, rely upon the allegations of the *complaint,* rather than the *counterclaim,* and are factually disputed by Childers. Because we are limited to the face of the counterclaim in considering the present motion, *see Refco, Inc. v. Troika Inv. Ltd.,* 702 F.Supp. 684, 685 n. 2 (N.D.Ill.1988), the Terrells' first two arguments are inapposite, at least at this juncture.

■ Counter-defendants next assert that the partnership agreement resulted in an automatic forfeiture of any partner's interest if that partner failed to make the required payment on three occasions. The Terrells point to the allegation that various partners were not able to make all of their payments when due in the late 1980s, and assert that the partnership therefore dissolved by operation of law, terminating any fiduciary obligations between partners. *See* 805 ILCS 205/31(d) (partnership dissolves as a matter of law by the expulsion of any partner). However, the counterclaim merely states that "certain of the investors encountered financial difficulties which resulted in their not being able to make all of their payments when due." Countercl. ¶ 7. Reading this allegation in the light most favorable to the counter-plaintiff, it is possible that no single investor failed to make more than two payments. Under these facts, there would be no forfeiture of partnership interest and no automatic dissolution of the partnership,[2] and therefore no termination of fiduciary duties. Accordingly, the Terrells are not entitled to dismissal on this ground.

Finally, the Terrells assert that the partnership agreement includes a "confession of judgment" clause, which provides a means by which delinquent payments may be collected from a partner. However, the clause does not state that it provides an exclusive remedy for failure to make payments, and the Terrells cite no authority for the proposition that such a clause preempts other causes of action, including a claim for breach of fiduciary duty. In short, because we find the Terrells' arguments unconvincing, we deny their motion to dismiss Count I of the amended counterclaim.[3]

### B. Motion to Strike

■ Defendants have moved to strike six paragraphs of the amended complaint. The first five relate to how JoAnn Childers reported her income and expenses on her income tax returns. While defendants acknowledge that the income may be relevant to plaintiffs' action (and have therefore not moved to strike the paragraphs which allege receipt of that income), they assert that the additional allegations regarding her reporting of that income are irrelevant. We disagree. The allegations at issue relate not only to JoAnn Childers' receipt of the income, but also to her accountants' knowledge of Childers' participation in the alleged scheme to defraud the Terrells. Because the accountants are also defendants in the present action, we conclude that the allegations are relevant to their knowledge of and participation in the alleged wrongdoing.

Defendants also maintain, however, that these allegations are prejudicial because they suggest that defendants engaged in incorrect reporting or income tax evasion. While we are not convinced that the paragraphs import such a suggestion, we are confident that a limiting instruction will eliminate any danger of prejudice. *See* Fed.R.Evid. 105. Accordingly, defendants motion to strike paragraphs 75(a), 75(b), 100(g), 100(h), and 104 is denied.

---

**2.** Childers also asserts that forfeiture of partnership interest is not the same as expulsion of a partner, and only the latter is grounds for dissolution of the partnership as a matter of law. We need not resolve this issue because, as discussed above, it is not clear that circumstances occurred which would result in forfeiture of any partner's interest.

**3.** In light of this ruling, we deny as moot both plaintiff's motion to dismiss the original counterclaim filed in this action and defendant's motion to deny motion to dismiss counterclaim.

■ Finally, defendants move to strike paragraph 165B, which states:

On November 24, 1992, the United States District Court for the Northern District of Illinois found that Keith Hernandez, a first baseman for various major league teams, alleged a triable claim for fraud against Jack Childers and TSI as a result of an investment recommendation in 1980.

Defendants maintain that this allegation is both irrelevant and prejudicial. We agree. Plaintiffs maintain that the allegation supports their assertion that defendant were engaged in an ongoing scheme to defraud TSI clients. However, all the paragraph supports is a finding that another TSI client was able to file a lawsuit which survived a motion to dismiss. Absent a ruling for Hernandez on the merits (or proof of the merits of Hernandez' claim in the present lawsuit), the Hernandez action is of limited relevance. Furthermore, it is highly prejudicial, in that it might suggest to a jury that defendants actually perpetrated a fraud against Hernandez. Given these considerations, we agree with defendants that paragraph 165B is improper, and therefore grant their motion to strike that paragraph. *See Simmons v. John F. Kennedy Med. Ctr.*, 727 F.Supp. 440, 441 (N.D.Ill.1989) (irrelevant and prejudicial allegations may be stricken).

## C. Motion for Collateral Estoppel

■ Finally, plaintiffs move for a finding of collateral estoppel against TSI and John Childers. They seek to introduce at trial the findings of the United States District Court from the Middle District of Florida in *Jones v. John Childers and Talent Services, Inc.*, No. 88–85–Civ–T–22C, 1992 WL 300845, and to prevent Childers and TSI from relitigating these findings.[4] In *Jones*, the court concluded, after a bench trial, that the defendants had defrauded their client, a professional football player, in connection with certain investments.[5] Plaintiffs assert that these findings support their claim that defendants John Childers and TSI engaged in a pattern of racketeering activity, an element of their federal RICO claim, and are therefore entitled to preclusive effect. As the Second Circuit stated in *Metromedia Co. v. Fugazy*, 983 F.2d 350 (2nd Cir.1992):

The doctrine of collateral estoppel, or issue preclusion, bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Id.* at 365. The central dispute between the parties is whether the issue in the two cases is the same. Taking a narrow view of the term "issue," defendants suggest that the issue in *Jones* related to an investment in Israeli research and development limited partnerships, and the appropriate tax treatment of that investment, while the issue in the present action relates primarily to the Pine Street property. Plaintiffs, on the other hand, assert that the issue in *Jones* is identical to one they wish to present here: whether John Childers and TSI defrauded Jones, a professional athlete, in connection with financial advice. We agree with plaintiffs that the relevant issue in *Jones* is also encompassed in the present action, and that collateral estoppel is therefore appropriate. While the central issues in this case are defendants' actions relative to the Terrells, plaintiffs have also stated a cause of action under the federal RICO statute. That statute requires that plaintiffs establish that defendants engaged in a "pattern of racketeering activity." *See* 18 U.S.C. § 1962 *et seq.* As we noted in denying defendants' motion to dismiss plaintiffs' RICO claim, the *Jones*

---

4. Plaintiffs also seek an order of collateral estoppel regarding the *Hernandez* dispute discussed above. However, plaintiffs acknowledge, at least with respect to the present motion, that their request is only appropriate "to the extent that [the case] proceeds to trial before this case and results in a judgment adverse to defendants." Pl.'s Mem. Supp. at 2 n. 1. After plaintiffs filed their motion, the parties in *Hernandez* stipulated to a dismissal and agreed to arbitrate their differences. Accordingly, consistent with our ruling on defendants' motion to strike, we conclude that reference to *Hernandez* would be inappropriate in this action. We therefore deny plaintiffs' motion as applied to *Hernandez*.

5. The court also concluded that the defendants in that action violated the Florida RICO statute.

case is sufficiently similar to allow a jury to conclude that Childers and TSI engaged in a pattern of racketeering activity. While that ultimate question (*i.e.,* the existence of a pattern of racketeering activity) remains a question for the jury, the findings of the *Jones* court themselves should not be the subject of relitigation. *See Metromedia Co.,* 983 F.2d at 365–69 (defendant estopped from relitigating prior finding of bankruptcy fraud in subsequent civil RICO action based in part upon that fraud, although question of whether bankruptcy fraud and other acts constituted "pattern" was left to jury).[6] Accordingly, plaintiffs' motion for collateral estoppel against John Childers and TSI, as it relates to the *Jones* action, is granted.

### IV. Conclusion

For the reasons set forth above, plaintiffs' motion to dismiss the amended counterclaim is granted in part and denied in part, defendants' motion to strike is granted in part and denied in part, and plaintiffs' motion for collateral estoppel is granted in part and denied in part. It is so ordered.

---

6. We are unconvinced by defendants' attempts to distinguish *Metromedia* and the other cases cited by plaintiffs in support of their motion. While it is true that those cases used the estopped issue as a evidence of a predicate act, rather than to show a pattern, defendants have articulated no reason why this distinction is relevant. On the contrary, collateral estoppel has been used in the manner urged by defendants in other areas of the law. *See, e.g., Hawkins v. Hennepin Technical Ctr.,* 900 F.2d 153, 155 (8th Cir.1990) (prior judgment of gender discrimination against defendant relevant in gender discrimination suit brought by another woman against defendant; court suggested that earlier judgment was likely entitled to collateral estoppel).