**Edward SWEET and Kimberly Sweet, Plaintiffs,**

**v.**

**CITY OF CHICAGO, Defendant.**

**No. 96 C 4076.**

United States District Court, N.D.Illinois, Eastern Division.

Dec. 23, 1996.

Sara Elwood Cook, Kristin L. Dvorsky, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, Thomas Henry Cafcas, Jr., Waucanda, IL, for Plaintiffs.

Mary Catherine Cox, Michael A. Forti, Corporation Counsel, City of Chicago Law Department, Chicago, IL, Barbara J. Mulvanny, Assistant Corporation Counsel, Litigation Division, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

ANDERSEN, District Judge.

The plaintiffs are authors of a guidebook entitled "Eat Your Art Out, Chicago" (the "Guidebook"), published in 1989, which lists restaurants and bars in the Chicago region that exhibit art for sale and sets forth their terms of exhibition. The sole criterion for listing in the Guidebook is the establishment's active interest in showing art.

Since 1981, the defendant, City of Chicago ("City"), has conducted an annual food festival entitled "Taste of Chicago," which brings together a large number of local dining establishments to represent the wide variety of restaurants in Chicago. Since 1995, the City has also presented, as part of the Taste of Chicago festival, the "Eat Your Art Out" art fair (the "Art Fair"), featuring original paintings, sculpture, jewelry, and photography by local artists. The plaintiffs have filed an action against the City, alleging that its presentation of the Art Fair infringes on their copyright in the Guidebook, in violation of the United States Copyright Act, 17 U.S.C. §§ 101–1101 (Count I), and that it violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by creating a false impression that the plaintiffs created, endorse, or are affiliated with, the Art Fair (Count II). The matter is now before us on the City's motion to dismiss for failure to state a cause of action. For the reasons set forth below, we grant the motion.

### Discussion

On a motion to dismiss, we accept as true all well-pleaded factual allegations of the complaint, and draw all reasonable inferences therefrom in favor of the plaintiff. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir.1992). The court need not, however, ignore facts alleged in the complaint that undermine the plaintiff's claim. *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir.1993) (citing *Roots Partnership v. Lands' End*, 965 F.2d 1411, 1416 (7th Cir.1992)). The complaint will not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). "Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted).

### A. *Copyright Infringement*

■ The City first contends that Count I of the complaint should be dismissed because the plaintiffs fail to allege ownership of the copyright. It notes that according to the copyright notice in the Guidebook, the copyright is held by Urbs in Photo, Inc. and that the cover illustration, which is alleged to be infringed by the City's advertising for the Art Fair, is credited to Millie Sweet. The City argues that since the complaint alleges no transfer or assignment of copyright ownership, the plaintiffs have not stated a claim for copyright infringement. It further argues that even the explanation offered by the plaintiffs in their response brief and supporting documentation that as successors to the now dissolved Urbs in Photo, Inc. ("Urbs"), they are the owners of the copyright and that Millie Sweet's work on the cover illustration was a work done for hire for Urbs cannot cure the alleged defects in the complaint because matters not raised in the pleadings themselves are not appropriate for consideration on a motion to dismiss.

■ It is well settled that in order to state a claim of copyright infringement, a complaint need allege only ownership, registration, and infringement. *Friedman, Eisenstein, Raemer & Schwartz v. Afterman*, 599 F.Supp. 902, 903 (N.D.Ill.1984). Other details of the claim may be obtained by discovery. *Id.* at 904. Where the complaint alleges these elements, the complaint need not specifically allege the derivation of the plaintiffs' ownership of the copyright. *Bobrecker v. Denebeim*, 25 F.Supp. 208, 209 (W.D.Mo. 1938); *see also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d at § 1237 (1990). The complaint alleges in paragraphs 4 and 6 that the plaintiffs hold a valid copyright to their book, that it was registered with the United States Copyright Office, and that the defendant infringed their copyright. Thus, the plaintiffs have properly alleged ownership and registration of the copyright.

■ The City then contends that the complaint fails to allege that it infringed any of the exclusive rights protected by copyright. Plaintiffs allege that they are the authors of a book. Thus, their work is categorized under the Copyright Act as a literary work. 17 U.S.C. §§ 101, 102(1). The exclusive rights

applicable to a literary work are: (1) to reproduce the copyrighted work; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies of the copyrighted work; (4) to perform the copyrighted work publicly; and (5) to display the copyrighted work publicly. 17 U.S.C. § 106.

The plaintiffs do not allege that the Art Fair or the associated advertising and publicity reproduces, distributes, performs, or displays any of the contents of the Guidebook. Nor do they allege that the restaurants or other establishments represented at the "Taste of Chicago" festival are the same as those included in the Guidebook or that they are arranged in the same or similar manner. Thus, the only one of these exclusive rights that is conceivably applicable here is the second: the preparation of derivative works. A "derivative work" is defined as

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work has been recast, transformed, or adapted.

17 U.S.C. § 101. It is difficult to see how an outdoor art fair could be a "derivative work"[1] of a guidebook to certain Chicago area restaurants and bars, unless the art fair somehow indicates which restaurants or bars in Chicago display art for sale. Even if it did so, that would be merely the expression of an idea, which is insufficient in itself, as we shall see, to establish copyright infringement. But the plaintiffs do not allege that.

Instead, what the plaintiffs allege is that the City infringes upon their copyright by "using the title, derivative works and strikingly similar graphics of 'art works' in connection with Defendant's art fairs," Compl. at ¶ 7, that "Defendant's 'Eat Your Art Out' event similarly [to the Guidebook] connects

local restaurants, clubs, and public eateries and establishments with the display of works of art by local artists, which works of art are available for viewing and purchase by the patrons of these establishments," Compl. at ¶ 9, that the City's Art Fair and the "advertising and marketing relating thereto and written promotional materials and books are the natural extension of and a protected derivation of [the Guidebook], by connecting all, or as many as practicable, of the regional restaurants and all, or as many as practicable, of the local artists with common patrons," Compl. at ¶ 11, and that the Art Fair 'is a combination of local eating and drinking establishments with the viewing and sale of works of art by local, juried artists, which is derived from [the Guidebook]. Compl. at ¶ 13. Plaintiffs state further that their "expression of the idea that there are places which encourage art patrons and food patrons to enjoy both pursuits at the same time and place is the essence of (the Guidebook), which was the first and unique written presentation thereof." Compl. at ¶ 14.

In essence, these allegations claim that the City copies the title of the Guidebook, appropriates the idea of connecting art and dining establishments, and uses similar graphics in its advertising. The plaintiffs do not explain what they mean by the words "connects" or "connecting" in paragraphs 9 and 11 of the complaint. As we have already noted, there are no allegations that the Art Fair or its publicity somehow indicates which restaurants or bars in Chicago display art for sale. What we are left with seems to be no more than the complaint that, like the Guidebook, the Art Fair encompasses in some fashion both eating establishments and art works within the ambit of a single event.

The Copyright Act expressly limits the availability of copyright protection:

---

1. The plaintiffs' use of the term "derivative work" in the complaint is confusing. Paragraph 7 states: "Defendant has infringed upon Plaintiffs' Copyright and its derivative works...." Paragraph 15 states: "The Defendant has ... copied the Plaintiffs' derivative works...." The plaintiffs have not identified a derivative work in which they hold a copyright upon which the City is alleged to infringe. We suspect that their use

of the above phraseology is an inartful attempt to allege that the art fair is a derivative work that infringes on the plaintiffs' copyright in their Guidebook and will treat it in that manner. This conclusion is bolstered by the phraseology in paragraph 13 of the complaint: "The Defendant's event is ... derived from Plaintiff's Copyright, Eat Your Art Out, Chicago."

In no case does copyright protection for an original work of authorship extend to any *idea*, procedure, process, system, method of operation, *concept*, principle, or discovery, regardless of the form in which it is described, illustrated or embodied in such work.

17 U.S.C. § 102(b) (emphasis added). Thus, the plaintiffs' allegations that the City violated their copyright by copying their "idea" of "connecting" local dining establishments with the display and sale of works of art by local artists is without merit. Even were ideas protected, the similarity between the ideas expressed in the Guidebook and at the art fair is tenuous at best. As we have seen, the Art Fair is an event separate from the individual dining establishments taking part in the "Taste of Chicago" festival and, unlike in the Guidebook, there appears to be no connection made between any of the art works displayed and any given dining establishment. Persons invited to view and purchase the art works are not patrons of individual dining establishments, but rather are patrons of the "Taste of Chicago" festival as a whole. Any similarity that remains must reside in the title and graphics.

■ It is well established that titles and short phrases are not protected by copyright. *Alberto–Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir.1972); *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir.1996); *Perma Greetings, Inc. v. Russ Berrie & Co., Inc.*, 598 F.Supp. 445, 447 (E.D.Mo.1984); *Arthur Retlaw & Assocs., Inc. v. Travenol Laboratories, Inc.*, 582 F.Supp. 1010, 1014 (N.D.Ill.1984); 37 C.F.R. § 202.1(a) (excluding "[w]ords and short phrases such as names, titles, and slogans" from copyright protection). Thus, the plaintiffs' title "Eat Your Art Out, Chicago" is not protected by copyright, particularly since it is no more than a minor variant of the well-known phrase "eat your heart out" that might readily occur to anyone expressing (in his own fashion) the (unprotected) "idea" of connecting art and eating. *See Perma Greetings, supra* at 448 ("Cliched language, phrases and expressions conveying an idea that is typically expressed in a limited

number of stereotypic fashions, are not subject to copyright protection.").

■ The plaintiffs do not allege that the City has copied its graphics, only that it uses "strikingly similar" graphics. Again, the complaint sets forth no facts that would permit a conclusion that the graphics are similar. The plaintiffs' exhibits filed with their response brief, however, reveal what they mean by "strikingly similar." The cover of the Guidebook displays an original design depicting a Picassoesque figure taking a bite out of a framed still-life painting. The alleged infringing graphics are the covers of "Taste of Chicago" brochures[2] that illustrate, in somewhat modern style—distorted perspective, lack of proper scale—a person eating food and drinking a beverage against a background showing the Chicago skyline and various downtown points of interest. No art works are evident. There do not appear to be any advertising graphics specifically connected with the Art Fair, but only with the "Taste of Chicago" festival as a whole.

■ Though copyright protection does extend beyond literal copying to embrace substantial similarity in the expression of an idea, *see, e.g., Perma Greetings, supra* at 447, the graphics at issue here are not substantially similar. *See, e.g., Reyher v. Children's Television Workshop*, 387 F.Supp. 869, 872 (S.D.N.Y.1975), *aff'd*, 533 F.2d 87 (2d Cir. 1976), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976) (finding no infringement even where illustrations showed similarity in subject matter and relative positions of persons depicted). Indeed, they do not even express the same or a similar idea.

■ Though appearing to concede all of this, the plaintiffs still contend that their copyright is infringed because the Art Fair and the related advertising "captures the total expression ... as well as the concept and feel of Plaintiff's Book...." However, the "total concept and feel" approach may be applied only after the scope of copyright protection is determined. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446–47 (9th Cir.1994), *cert denied*, —— U.S. ——,

---

2. The complaint itself does not specify which of the City's graphics are allegedly infringing.

115 S.Ct. 1176, 130 L.Ed.2d 1129 (1995). In other words, the "total concept and feel" analysis addresses the question of whether alleged infringing matter is sufficiently similar to material that has been otherwise determined to be protected by copyright to be infringing in fact. In contrast, the plaintiffs impermissibly employ the "total concept and feel" analysis in an attempt to show that their "idea" of "connecting" dining establishments and works of art is itself protected by copyright. Because an idea is not protected by copyright, any showing of substantial similarity, whether by "total concept and feel" analysis or by any other means is irrelevant.

■ We conclude that the plaintiffs allege infringement of an idea and a title, neither of which are protected by copyright. Dismissal with respect to these items is therefore with prejudice. Graphics, on the other hand are protected by copyright. Though the face of the complaint does not set forth facts showing that the graphics were infringed, dismissal with respect to graphics would normally be without prejudice to allow the plaintiff to plead sufficient facts. In this case, however, the plaintiffs have submitted copies of the graphics at issue. Though such submissions in a response brief are not enough to cure the defects in a deficient complaint, *Henthorn v. Department of Navy*, 29 F.3d 682, 688 (D.C.Cir.1994); *Terrell v. Childers*, 889 F.Supp. 311, 314 (N.D.Ill.1995), they do allow us to determine that the plaintiffs could not in good faith allege infringement of their graphics in an amended complaint. Count I of the complaint is therefore dismissed in its entirety with prejudice.

### B. *Trademark Infringement*

■ The plaintiffs allege that the City's advertising, marketing, and promotion of the Art Fair creates the false impression that the plaintiffs are the creators of the event, endorse it, or are in some way affiliated with it, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 1125(a) states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

■ A claim under section 1125(a) shall be dismissed for failure to allege that the act of infringement affects interstate commerce. *Iding v. Anaston*, 266 F.Supp. 1015, 1018 (N.D.Ill.1967); *see also Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 838 (11th Cir.1983) ("purely intrastate disputes ... are not subject to the Lanham Act's regulation").

The City contends that Count II should be dismissed because the plaintiffs have not and cannot allege that their common-law mark is used in interstate commerce and that the Taste of Chicago event is other than a purely local event. We agree that the Complaint does not adequately allege that the alleged infringement affects interstate commerce. This is a sufficient reason for dismissing Count II without prejudice.

■ The City next contends that Count II should be dismissed because the plaintiffs

have not and cannot allege sufficient facts to show a likelihood of confusion between the Guidebook and the Art Fair. To prevail on a section 1125(a) claim under the Lanham Act, "it is fundamental ... that a plaintiff make well-pleaded allegations indicating that the defendant has created a 'likelihood of confusion' as to the origin of its products." *Hooker v. Columbia Pictures Indus., Inc.,* 551 F.Supp. 1060, 1065 (N.D.Ill.1982). The complaint merely makes the conclusory assertion that confusion is likely and sets forth no facts that would permit a conclusion that patrons of the Art Fair are likely to be confused as to the origin or sponsorship of the Art Fair.

Furthermore, goods or services are "unrelated as a matter of law" and not susceptible to a finding of likelihood of confusion where there are sufficiently sharp differences in the nature of the goods or services. *Toho Co., Ltd. v. Sears, Roebuck & Co.,* 645 F.2d 788, 791 (9th Cir.1981); *Hooker,* 551 F.Supp. at 1065. In *Toho,* the plaintiffs, a Japanese corporation that produced and distributed movies and television cartoon series featuring a fictional reptilian monster "Godzilla" and using the slogan "King of Monsters" and its American licensees, sued the defendant, an American retailer who produced and sold plastic garbage bags in boxes that displayed the name "Bagzilla," depicted a "comic, helpful, personified reptilian creature," and carried the legend "Monstrously Strong Bags." *Toho, supra,* at 789–90. The Ninth Circuit affirmed the district court's dismissal of the complaint and, relying primarily on the sharp difference in the nature of the products involved, found that the goods are "unrelated as a matter of law" and that "Toho ha[d] not alleged facts that would permit a conclusion that consumers are likely to be confused as to source or sponsorship of the garbage bags."

In *Hooker,* the plaintiff, a professional wood-carver who runs a business under his name, T.J. Hooker, challenged the use of the same name for the principal character in and title of a popular television series, "T.J. Hooker," featuring a fictional policeman in California. The district court dismissed the complaint, finding that the products were unrelated as a matter of law and, further-

more, that the channels through which the products were marketed appear to be entirely different, the plaintiff selling his goods through specialty catalogues and gift shops, whereas the defendant "marketed" its show on a nationwide television network.

Here, the comparison is between a guidebook that provides information as to where patrons can find dining establishments that display works of art on their premises that are for sale to their patrons and an art fair that provides no such information, but is merely an ancillary part of an outdoor festival that primarily features dining establishments. The plaintiffs cannot in good faith allege that their Guidebook, or the information it provides, is in any sense related to the Art Fair. Moreover, the Guidebook and Art Fair are marketed through different channels. The Guidebook is sold in bookstores and is available in libraries. Compl. at ¶ 12. The Art Fair is an event and is "marketed" along with the "Taste of Chicago" festival, of which it is a part. Compl. at ¶ 6. Its marketing is similar to that of other events rather than to the marketing of goods, such as books. We conclude that the Guidebook and the Art Fair are not related as a matter of law and that the plaintiffs are unable to establish any likelihood of confusion as to either origin or sponsorship.

The plaintiffs respond, however, that actual confusion exists, because "[p]eople contacted them, in Boston, to inquire as to their connection to the City's festival." Resp. Br. at ¶ II.5. This is insufficient to withstand dismissal, because matter set forth in a responsive brief cannot cure the defects in a deficient complaint. *Henthorn v. Department of Navy,* 29 F.3d 682, 688 (D.C.Cir. 1994); *Terrell v. Childers,* 889 F.Supp. 311, 314 (N.D.Ill.1995). Moreover, the statement, even if did occur in the complaint, is devoid of facts showing that the alleged inquiries indicate confusion that arose from the City's use of the title "Eat Your Art Out" for the Art Fair. There is no indication of the number of inquiries nor are the inquirers identified in any fashion. Indeed, further allegations made by the plaintiffs in their response brief—though not appearing in the complaint—undercut any indication that confu-

sion arose from any similarity in titles. The plaintiffs point out at some length that plaintiff Edward Sweet had been the City's festival director in 1989 and 1990, had extensive contacts with festival personnel, and that both plaintiffs have been in the business of developing festivals for municipalities. It is a fair inference that any inquiries as to their connection to the City's festival arose from knowledge of the plaintiffs' previous experience with the same and similar festivals, rather than from any similarity in titles.

Even though evidence of actual confusion is often the best evidence of likelihood of confusion, where such reports are few and scattered or are ephemeral, such isolated instances of actual confusion are not entitled to great weight. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1110 (6th Cir.1991); *see also, Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir.1982) ("Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight"). Indeed, the existence of only a handful of instances compared to a significantly larger number of patrons leads to an inference that no likelihood of confusion exists. *Homeowners Group, supra* at 1110.

We conclude that the plaintiffs cannot in good faith amend their complaint to show that the Art Fair poses a threat of confusing consumers by suggesting that the event was sponsored by or connected with the plaintiffs or their Guidebook. Accordingly, Count II is dismissed with prejudice.

### *Conclusion*

For the foregoing reasons, the defendant's motion to dismiss the complaint for failure to state a cause of action is granted. The complaint is dismissed with prejudice. This is a final and appealable order.